VIKAS KHANNA[1]
Attorney for the United States
DAVID V. SIMUNOVICH
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 645-2736
david.simunovich@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Petitioner*,<br><br>v.<br><br>MWW GROUP LLC d/b/a MIKEWORLDWIDE,<br><br>*Respondent*. | Civil Action No. 23-20757 |

**DECLARATION OF AUSA DAVID V. SIMUNOVICH**

I, David V. Simunovich, pursuant to 28 U.S.C. § 1746, declare:

1. I am an Assistant United States Attorney for the District of New Jersey. Except for matters stated on information and belief, I have personal knowledge of the matters set forth herein and, if called upon to testify, could and would testify competently to these facts.

2. The United States has commenced this action because Respondent MWW Group, LLC d/b/a Mikeworldwide ("MWW") has failed to produce any

[1] Acting pursuant to authority conferred by 28 U.S.C. § 515.

documents or answer any interrogatories in response to a civil investigative demand that was served on July 7, 2023.

3. On information and belief, MWW is a public relations firm incorporated in the State of New Jersey with a principal place of business at 1 Meadowlands Plaza, East Rutherford, New Jersey. During the relevant time period, MWW was registered under the Foreign Agents Registration Act of 1938, as amended ("FARA"), 22 U.S.C. § 611 *et seq*.

4. The United States Attorney's Office for the District of New Jersey is investigating whether MWW violated the False Claims Act, 31 U.S.C. § 3729 *et seq*. in connection with a loan that MWW obtained pursuant to the federal Paycheck Protection Program ("PPP"), which was enacted pursuant to the CARES Act, Pub. L. No. 116-136 (March 27, 2020). More specifically, the U.S. Attorney's Office is investigating whether MWW violated the False Claims Act by falsely stating on its PPP application that it was not required to be registered under FARA. At the time MWW submitted its application, it was registered under FARA. Had MWW certified on its PPP application that was FARA-registered, MWW would have been ineligible for a PPP loan. Instead, MWW's statements resulted in the company receiving a $2 million PPP loan.

5. The Attorney General of the United States, or a designee, is authorized to issue civil investigative demands to "any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). Consistent with § 3733(a)(2), the Attorney

General delegated that authority to United States Attorneys. *See* 28 C.F.R. Appendix to Subpart Y of Part 0, Civil Division Directive 1-15 § 1(c, d). The United States Attorney for the District of New Jersey delegated his CID-issuing authority to the Chief of the Health Care Fraud Unit (among certain others within the U.S. Attorney's Office for the District of New Jersey). *See* 28 C.F.R. Appendix to Subpart Y of Part 0, Civil Division Directive 1-15 § 1(c, d). On or about June 22, 2023, and pursuant to the U.S. Attorney's designation, the Chief of the Health Care Fraud Unit authorized Civil Investigative Demand No. NJ-2023-020 ("the CID"). *See* Exhibit 1.[2]

6. On July 7, 2023, I served MWW with a copy of the CID by sending the CID to counsel via email.[3]

7. The CID seeks documents and interrogatory responses from MWW relating to the PPP loan at issue and MWW's FARA-registration status. Consistent with 31 U.S.C. § 3733(a)(2)(E), the CID required that MWW provided its responses within 20 days of service, or July 27, 2023.

8. On July 14, 2023, MWW's counsel requested an extension of time to respond to the CID, moving the response date from July 27th to September 8th. I agreed to the request for additional time.

---

[2] Prior to issuing the CID, we had engaged with MWW's counsel to explore the possibility of a pre-suit resolution. Though the parties reached agreement on certain terms, we have been unable to reach agreement on all material terms. The Government rescinded its settlement offer on July 21, 2023.

[3] MWW's counsel has advised that it was authorized to accept service of the CID.

9. On August 25, 2023, MWW's counsel requested an additional extension of time to respond to the CID, pushing the response date from September 8th to October 23rd. I agreed to the extension on the condition that MWW provide responses to five document requests and seven interrogatories by September 8th.[4] MWW did not provide any documents or interrogatory responses by September 8th (or at any time thereafter).

10. On September 11, 2023, I advised counsel that MWW's failure to provide any responses to the CID amounted to material noncompliance. I offered MWW the opportunity to cure the deficiency by September 22nd.

11. As of the filing of this Petition, MWW has not provided any documents or interrogatory answers in response to the CID.

12. The records requested in the CID are essential to the proper conduct and completion of Government's investigation and are essential to a legitimate law enforcement inquiry. MWW's failure to respond to the CID has impeded, and continues to impede, this Office's investigation.

13. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of September, 2023 in Newark, New Jersey.

David V. Simunovich

David V. Simunovich
Assistant United States Attorney

[4] Specifically, I requested that MWW provide responses to Document Request Nos. 5, 7, 12-14 and Interrogatory Nos. 4, 6, 9-13 by Sept. 8th.

# Exhibit 1

# Civil Investigative Demand

For Documents and Responses to Interrogatories

United States Department of Justice
United States Attorney's Office - Newark, NJ

| | |
|---|---|
| To: **MWW Group LLC**<br>**1 Meadowlands Plaza**<br>**East Rutherford, NJ 07073** | Civil Investigative Demand<br>No. NJ-2023-020 |

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C.§§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation focuses on whether MWW Group LLC may have violated the False Claims Act in making false representations to obtain a loan pursuant to Paycheck Protection Program, enacted pursuant to the CARES Act, Pub. L. No. 116-136 (March 27, 2020).

You are required by this Demand to produce documents and answer interrogatories set forth in the attached Schedule A. You must make the documents and information available to Assistant U.S. Attorney David Simunovich and Special Agent Anurag Biswas of the U.S. Small Business Administration, Office of Inspector General, both of whom have been designated as false claims law investigators in this matter.

The documents and information shall be furnished no later than 20 days from the date of receipt of this Demand, at the United States Attorney's Office, 970 Broad Street, Suite 700, Newark, NJ 07102, Attn: AUSA David Simunovich, or at such other date and location as may be agreed upon by Mr. Simunovich and you. The production of documents and the provision of information in response to this Demand must be made under the sworn certificates in the form printed and attached to this Demand.

Mr. Simunovich may be contacted by telephone at (973) 645-2736, or via e-mail at david.simunovich@usdoj.gov.

Issued at Newark, NJ.

JASON GOULD
Digitally signed by JASON GOULD
Date: 2023.06.22 22:51:28 -04'00'

Jason S. Gould
Chief, Health Care Fraud Unit
United States Attorney's Office
District of New Jersey

## SCHEDULE A

## DEFINITIONS

**Addendum 1** refers to the document attached to this Civil Investigative Demand titled "Addendum 1" and which sets forth specifications for the production of electronically stored information in response to document requests set forth below.

**Berk** means 23rd Street Berk, LLC d/b/a Berk Communication, with an office located at 1250 Broadway, 3rd Floor, New York, NY 10001.

**Communication** is used in the broadest sense permitted by Federal Rule of Civil Procedure 26(b), 34(a) and 45(a) and means any transmission or exchange of information orally or in a Document.

**Document** means (i) paper documents (including, but not limited to, applications, forms, manuals, notes, statements, pamphlets, books, reports, memoranda, mailings, records, etc.); (ii) electronic files (including, but not limited to, emails, text messages, PDF files, Microsoft Word documents, Microsoft Excel spreadsheets, etc.); and (iii) any other electronic files (including, but not limited to, audio recordings, voicemail, videos, images, videos, etc.).

**FARA** means the Foreign Agents Registration Act of 1938, as amended.

**IMOT** means the Israel Ministry of Tourism.

**PPP** means the Paycheck Protection Program, established in March 2020, under the Coronavirus Aid, Relief, and Economic Security Act to provide loans guaranteed by the Small Business Administration to businesses suffering economically as a result of the COVID-19 pandemic.

**Relevant Time Period** means January 1, 2019 through the date of this Civil Investigative Demand.

**SBA** means the U.S. Small Business Administration.

**Second Draw PPP Loan** means PPP Loan Number 4851598402, in amount of approximately $2 million, issued by M&T Bank to MWW as part of the PPP.

**You**, **Your**, and **MWW** means MWW Group LLC, with a principal place of business at 1 Meadowlands Plaza, East Rutherford, NJ 07073.

## INSTRUCTIONS

1. You must answer the following interrogatories and respond to the following document requests in accordance with these instructions and considering the foregoing definitions.

2. Unless otherwise specified in a document request set forth below, Your response to each document request should be construed to cover the Relevant Time Period.

3. Whenever appropriate, the singular form of a word shall be interpreted as plural.

4. This Demand is continuing in nature. If You become aware of or acquire possession, custody, or control of additional documents that are responsive to this Demand, or if You become aware of or acquire additional information that is responsive to these Interrogatories, You shall promptly produce such additional documents or supplement Your Interrogatory responses.

5. This Demand applies to all documents and information in Your possession, custody, or control regardless of their location and regardless of whether such documents or information are held by Your current or former employees, including, but not limited to, in-house IT specialists and technicians, IT specialists and technicians to whom digital services have been out-sourced.

6. All documents produced pursuant to this Demand are to be organized in such a manner that all documents relating to a particular request are grouped together and identified as being responsive to that request.

7. If You contend that information requested or a document sought to be produced herein is subject to any privilege, state the general subject matter of the information or document at issue, the date the information or document was created, transmitted or prepared, each person having knowledge of the information or document, its author, signer and each person to whom a copy was directed, and the nature of the privilege.

8. When a requested document contains both privileged and nonprivileged material, the nonprivileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document is redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

9. Documents sought by these requests and answers to these interrogatories shall include information and materials within Your knowledge, possession, custody or control as of the date of Your response. If You at any time had possession or control of information or a document called for under these interrogatories or requests, and if such information or document has been lost, destroyed, or is not presently in Your possession or control, please describe the information or document, the date of its loss, destruction, purge or separation from

possession or control, and the circumstances surrounding its loss, destruction, purge or separation from possession or control.

10. Your response to each interrogatory and document request shall be set forth in a manner that identifies the specific interrogatory or document request being addressed.

11. If no documents exist that are responsive to a specific document Request, a written statement to that effect shall be provided at the time of production.

12. All documents shall be produced in the manner in which they maintained in the usual course of business. In addition, electronically stored information ("ESI") shall be produced in a manner consistent with Addendum 1, unless the document request specifies a different format for the production (i.e., certain requests require compliance with Addendum 2, Template for Transaction Data and Template for Wire Transfers). If You contend in good faith that production of ESI in a manner consistent with Addendum 1 will impose an undue burden, then the parties will meet and confer in and agree on the specific format of the production, which shall, at a minimum, be in a reasonably usable form.

## DOCUMENT REQUESTS

1. Documents sufficient to describe MWW's ownership and organizational structure during the Relevant Time Period, including parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, and the corporate successors and assigns.

2. Documents relating to MWW's formation.

3. Management and organizational charts, including Documents sufficient to show and describe MWW's management structure and personnel.

4. All PPP applications submitted by or on behalf of MWW. For the sake of clarity, this request calls for the production of all Documents furnished by or on behalf of MWW as attachments to, or otherwise in support of, MWW's PPP applications.

5. All Documents that MWW relied on in preparing and submitting its PPP applications.

6. All Communications between MWW and any third party concerning MWW's PPP loan applications.

7. All Communications concerning the impact, if any, of MWW's FARA registration on MWW"s eligibility for the Second Draw PPP Loan.

8. All PPP loan forgiveness applications submitted by or on behalf of MWW. For the sake of clarity, this request calls for the production of all Documents furnished by or on behalf of MWW as attachments to, or otherwise in support of, MWW's application for forgiveness of its PPP loans.

9. All Communications concerning MWW's applications for forgiveness of its PPP loans.

10. All Documents, including Communications, concerning an assessment of whether any PPP loans obtained by MWW were eligible for PPP loan forgiveness.

11. MWW's FARA registration documents in effect during the Relevant Time Period.

12. All contracts or other agreements between MWW and IMOT in effect during the Relevant Time Period.

13. All invoices, bills, or other requests for payment created, during the Relevant Time Period, in connection with the contracts or agreements produced in response to Document Request No. 12.

14. Proofs of payment by IMOT pursuant to the invoices, bills, or other requests for payments produced in response to Document Request No. 13.

15. All Documents, including Communications, concerning any agreement between MWW and Berk as its relates to work performed for or on behalf of IMOT.

16. All Communications between MWW and Berk concerning IMOT.

17. Bank statements covering the Relevant Time Period for the bank account(s) identified in response Interrogatory No. 8.

18. Personnel files for each of the individuals identified in response to Interrogatory No. 1(b), 2(c), 5, 12, 13, and 14.

19. Documents sufficient to describe MWW's document retention policy. If the policy has changed over time, produce each iteration of the policy along with documents sufficient to show when each such policy was implemented.

## INTERROGATORIES

1. For each PPP loan that MWW received, identify:

    a. the date each PPP loan application was submitted;

    b. MWW's employee(s) or agent(s) primarily responsible for preparing each application;

    c. whether the PPP loan application was approved or denied;

    d. the loan amount;

    e. the loan number;

    f. the lender; and

    g. the current loan status, including any payments made or loan forgiveness requested and/or received.

2. For each PPP loan for which MWW sought forgiveness, identify:

    a. The PPP loan number for which MWW sought forgiveness;

    b. The date that the PPP forgiveness application was submitted;

    c. MWW's employee(s) or agent(s) primarily responsible for preparing the forgiveness application(s); and

    d. whether the PPP loan forgiveness application was approved or denied.

3. Identify any loan, grant, or economic relief that MWW sought, other than through the PPP, as a result of the COVID-19 pandemic. Include the date, amount, lender, and current status of any loan.

4. State whether MWW sought advice from any MWW employees or from any third party concerning MWW's FARA registration and MWW's Second Draw PPP Loan application.

5. If You answer the preceding Interrogatory in the affirmative, identify:

    a. The individual who sought such advice;

    b. The individual who provided any such advice; and

    c. Describe the means by which this advice was sought and provided (i.e., verbally; via email; etc.); and

d. Describe the nature of the advice provided.

6. Describe all actions taken, if any, to ensure that the information furnished in MWW's Second Draw PPP Loan application was true and correct. For the sake of clarity, any response to this Interrogatory should describe in detail what steps William Starace took to certify as true the statement that "The Applicant is not required to submit a registration statement under section 2 of the [FARA] (22 U.S.C. 612)."

7. Describe how MWW used the Second Draw PPP Loan proceeds.

8. Identify the MWW bank account(s) where the Second Draw PPP Loan proceeds were deposited. In responding to this Interrogatory, provide the name of the banking institution, the last four digits of the bank account number, and the name of the individual or entity in whose name the account was held.

9. Describe the relationship between MWW and IMOT as it existed during the Relevant Time Period.

10. Describe the relationship between MWW and Berk as it existed during the Relevant Time Period.

11. Describe the relationship between Berk and IMOT as it existed during the Relevant Time Period.

12. Identify the MWW employee(s) or representative(s) who served as the primary point of contact between MWW and IMOT during the Relevant Time Period.

13. Identify the MWW employee(s) or representative(s) who served as the primary point of contact between MWW and Berk as it relates to work performed for or on behalf of IMOT during the Relevant Time Period.

14. Identify the MWW employee or representative(s) who was primarily responsible for filing MWW's FARA registration during the Relevant Time Period.

15. To the extent Your document retention policy is not reduced to writing, describe Your document retention policy. If the policy has changed over time, describe the nature and timing of any such changes.

## CERTIFICATE OF COMPLIANCE[1]

I have responsibility for producing the documents requested in Civil Investigative Demand No. NJ-2023-020. I hereby certify that all of the materials required by that Demand that are in the possession, custody, or control of the entity to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature:________________________________

Printed Name:____________________________

Title: ____________________________________

SWORN TO before me this ______ day

of __________, 2023,

______________________________
NOTARY PUBLIC

1 In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

## **CERTIFICATE OF COMPLIANCE**[2]

I have responsibility for answering interrogatory numbers ________ in Civil Investigative Demand No. NJ-2023-020. I hereby certify that all the information required by the Demand and in the possession, custody, control, or knowledge of the person or entity to whom the Civil Investigative Demand is directed has been submitted.

To the extent information has not been furnished, the information is identified and the reasons why the information was not furnished are set forth with particularity. Additionally, if any such information has not been produced because of a lawful objection, the objection to the interrogatory and the reasons for the objection have been stated. I certify under penalty of perjury that the foregoing interrogatory responses are true and correct.

Signature:________________________________

Printed Name:____________________________

Title: ____________________________________

SWORN TO before me this ______ day

of ____________, 2023,

______________________________
NOTARY PUBLIC

[2] In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

# Addendum 1

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

**<u>Specifications for Production of Information (ESI and Digitized Images)</u>**
Version 1.2 (Revised 11/30/2018)

This document describes the technical requirements for the collection and production of information, including digitized (scanned) images and electronically stored information ("ESI"), to the U.S. Attorney's Office for the District of New Jersey. Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

**1. Specification Modifications**

Any modifications or deviations from these Specifications may be done only with the express permission of the government. Any responsive data or documents that exist in locations or native forms not discussed in these Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

**Information** refers to any and all types of "hard copy" documents and/or ESI, regardless of the form it takes or the media on which it exists or resides, including, but not limited to, e-mails and other electronic communications, word processing documents (whether in draft or final, partial or complete, versions), records, spreadsheets, databases, calendars, telephone logs, internet usage files, network access information, and data on other kinds of media, including mobile handheld devices such as iPhones, Android phones, and cell phones), thumb drives, CDs, as well as digital voicemail and text messages. *See* FRCP 34**.**

**Electronically Stored Information (ESI)** refers to any information created, manipulated, communicated, stored, and best utilized in digital form, requiring the use of computer hardware and software, including "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained . . ." FRCP 34(a)(1)(A).

**2. Production Format of ESI and Imaged Hard Copy**

Responsive ESI and imaged hard copy shall be produced in the format outlined below with particular attention paid to sections 9-19. All ESI (1) must include the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), (2) must also be rendered to TIFF image format, and (3) must also be accompanied by a Concordance® .dat file and a cross reference image

load file(".opt", ".lfp"). All applicable metadata (see section 3 below) shall be extracted and provided in a standard document review platform load file format as set forth below in sections 2(a), 2(b), and 2(c).

a. **Image File Format**: All images, paper documents scanned to images, or rendered ESI shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image.

- All TIFF file names shall include the unique Bates number burned into the image.
- Each Bates number shall be seven or more digits, include leading zeros in the number, and be unique for each produced page.
- All TIFF image files shall be stored with the "*.TIF" extension.
- Images shall be OCRed using a standard COTS products.
- All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
- No image folder shall contain more than 10,000 images.
- The entire file path, including the complete file name, shall not exceed 175 characters.

b. **Document Review Platform Cross Reference file:** Images should be accompanied by an Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page. Image Cross Reference Sample Format:

```
IM,ABC_0000001,D,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
IM,ABC_0000001,D,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
IM,ABC_0000001,C,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
IM,ABC_0000001, ,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
IM,ABC_0000001, ,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
IM,ABC_0000001,D,0,@VOL_001;IMAGES\00\001; ABC_0000001.tif;2,0
```

c. **Document Review Platform Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

- ASCII text delimited load files are defined using the following delimiters:

| | | |
|---|---|---|
| *Field Separator* | ¶ | *or Code 020* |
| *Text Qualifier* | þ | *or Code 254* |
| *Substitute Carriage Return or New Line* | ® | *or Code174* |

- The text file should also contain hyperlinks to applicable native files, such as Excel, PowerPoint, audio, or video files.
- There should be one line for every record in a collection.
- The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of

a Record (ending Bates), Document ID, Document Date, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLE

- The extracted/OCR text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the *.TXT extension.
- Text files shall not be provided in the same folder as the TIFF images.

### 3. Required Metadata/Database Fields

The metadata of ESI should be extracted and provided in a *.DAT file using the field definitions and formatting described below:

| **Table 1** | | | |
|---|---|---|---|
| **Field name** | **Field Description** | **Field Type** | **Field Value Length** |
| COMPANY | Company/Organization submitting data | Text | Unlimited |
| BOX# | Submission/volume/box number | Text | 10 |
| CUSTODIAN | Custodian(s)/Source(s) [Format: Last, First or ABC Dept.] | Text | Unlimited |
| AUTHOR | Creator of the document | Text | 160 |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 |
| PGCOUNT | Page Count | Integer | 10 |
| PARENTID | Parent's BEGDOC | Text | 60 |
| ATTACHIDs | Child document list; Child DOCID or Child Start Bates | Multi-Entry | Unlimited |
| ATTACHLIST | List of Attachment File Names | Multi-Entry | Unlimited |
| BEGATTACH | Start Bates of Parent | Text | 60 |
| ENDATTACH | End Bates of last attachment | Text | 60 |
| PROPERTIES | Privilege notations (e.g., Redacted, Document Withheld Based on Privilege) | Multi-Entry | Unlimited |
| RECORD TYPE | File, E-mail, Attachment, or Hard Copy | Text | 60 |
| FROM | Author's emails | Text | 160 |
| TO | Recipient] | Multi-Entry | Unlimited |
| CC | Carbon Copy Recipients | Multi-Entry | Unlimited |
| BCC | Blind Carbon Copy Recipients | Multi-Entry | Unlimited |
| SUBJECT | Subject/Document Title | Text | Unlimited |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited |
| DOCDATE | Document Date/Date Sent [Format: MM/DD/YYYY | Date Keyed | MM/DD/YYYY |
| TEXT | E-mail body, Other Electronic Document Extracted text, or OCR | Full Text | Unlimited |

| **Table 1** | | | |
|---|---|---|---|
| **Field name** | **Field Description** | **Field Type** | **Field Value Length** |
| TIMESENT | Time e-mail was sent | Time | 10 |
| DATECRTD | Date Created | Date | MM/DD/YYYY |
| DATESVD | Date Saved | Date | MM/DD/YYYY |
| DATEMOD | Date Last Modified | Date Keyed | MM/DD/YYYY |
| DATERCVD | Date Received | Date | MM/DD/YYYY |
| DATEACCD | Date Accessed | Date | MM/DD/YYYY |
| FILESIZE | File Size | Note Text | 10 |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited |
| APPLICATION | Application used to create native file (e.g., Excel, Outlook, Word) | Note Text | 160 |
| FILE EXTENSION | Extension for the file (e.g., *.DOCX; *.XLS) | Note Text | 10 |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited |
| INTPATH | E-mail folder path (e.g., Inbox\Active) or Hard Copy container information (e.g., Folder or binder name) | Full Text | Unlimited |
| PARAGRAPH | Subpoena/request paragraph number to which the document is responsive | Multi-Entry | Unlimited |
| HASH | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Note Text | Unlimited |
| MESSAGEHEADER | E-mail header. | Full Text | Unlimited |
| ATTACHMCOUNT | Number of attachments to an e-mail | Note Text | 10 |
| COMMENTS | Identifies whether the document has comments associated with it | Note Text | 10 |
| ACCOUNT NAME | Name on the account associated with the record. | Full Text | Unlimited |
| ACCOUNT NUMBER | Account number on the account associated with the record. | Full Text | Unlimited |
| TRANSACTION NUMBER | Transaction number related to the record. | Full Text | Unlimited |
| IMAGE REFERNCE FILE NAME | Cross reference filename of associated visual image (credit/debit slip) if available | Multi-Entry | Unlimited |

**4. De-duplication, Near-Duplicate Identification, E-mail Conversation Threading, and Other Culling Procedures**

De-duplication of exact copies within a custodian's data may be done, but all "filepaths" must be provided for each duplicate document. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near dupe ID

or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields.

**5. Hidden Text**
All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced along with the image file.

**6. Embedded Files**
All non-graphic embedded objects (e.g., Word documents, Excel spreadsheets, *.WAV files) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**7. Image-Only Files**
All image-only files (i.e., non-searchable PDFs, TIFFs, Snipping Tool and other screenshots, as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

**8. Hard Copy Records**

a. All hard copy material shall be digitized (scanned) and reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle (e.g., staples, paper clips, rubber bands, folders, or tabs in a binder). The first document in the collection represents the parent document and all other documents represent the children.

b. All documents shall be produced in black and white TIFF format unless the image requires color. An image "requires color" when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

c. All objective coding (e.g., document date or document author) should be discussed and produced to the government with metadata/database fields.

**9. Production of Email**
All email produced should be grouped in a repository (PST, etc.) format when possible. Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks etc. For purposes of production, responsive items shall provide the "Email" metadata fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email or other items) with the parent/child

relationship preserved. Email databases from operating systems other than Microsoft Exchange shall be produced after consultation and only with the express approval of the USAO about the format for the production of such databases.

**10. Production of Spreadsheets**
All spreadsheets (e.g., Excel) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format) and accompanied with a placeholder stating, "Produced in Native format". See section 18 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

**11. Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**
The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

**12. Production of Social Media**
Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn) the producing party shall first discuss with the government the potential export formats before collecting the information.

**13. Productions of Structured Data**
Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks), the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be provided in native Excel (*.XLS) format.

**14. Productions of Structured Data from Proprietary Applications**
Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (*.XLS) format.

**15. Production of Photographs with Native File or Digitized ESI**
Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as it was captured/created. All JPEG files shall have extracted metadata/database fields provided in a standard document review platform load file format as outlined in section 3 for "Other ESI."

**16. Format of ESI from Non-PC, Non-Windows-based Systems, or Unsupported formats**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, UNIX machines), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

**17. Production of Native Files (When Applicable Pursuant to These Specifications)**

Productions of native files as called for in these Specifications shall have extracted metadata/database fields provided in the standard document review platform load file format as defined in section 3 above.

ESI shall be produced in a manner which is functionally useable by the government. The following are examples:

- AutoCAD data (e.g., *.DWG, *.DXF) shall be processed/converted and produced as single-page *.JPG/*.TIFF image files according to specifications described above.
- GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
- Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**18. Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Native files should be assigned a single Bates number for the entire file. The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique name/number common to each page (when assigned to an image) or to each document (when assigned to a native file). If the government agrees to a rolling production, the naming/numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. However, it is highly recommended that an underscore be used between any prefix and the digits of a Bates number. If suffixes are required, please use "underscore notation." Below is a sample of underscore notation:

| | |
|---|---|
| PREFIX_0000001 | PREFIX_0000003 |
| PREFIX_0000001_001 | PREFIX_0000003_001 |
| PREFIX_0000001_002 | PREFIX_0000003_002 |

**19. Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications.

b. External hard drives (USB 3.0 (or better) or eSATA, formatted to NTFS format specifications) or flash drives.
c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
d. Media should be labeled with the case name, production date, Bates range, and producing party.

**20. Virus Protection and Security for Delivery of Production Data**
Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the prior written consent of the government.

**21. Compliance and Adherence to Generally Accepted Technical Standards**
Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. government or professional organizations.

**22. ReadMe Text File**
All deliverables shall include a readme text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths and formats. The readme file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

**23. Exception Log**
An Exception Log shall be included documenting any production anomalies utilizing the electronic Bates number (document ID or control numbering) assigned during the collection, processing and production phases.